AO 106 (Rev. 04/10) Application for a Search Warrant

FILED

SEP 2 6 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT

### for the

### Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. **1 9 M J 4 1 8 5**
)
Apple iPhone 8 )
IMEI 356086094462487 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 952, 960, 963 | importation of controlled substances and conspiracy to do same |

The application is based on these facts:

See Affidavit of SA Allie Peters

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Allie Peters, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___9/26/2019___

_____
*Judge's signature*

City and state:  San Diego, CA

J.A. Gossett, U.S. Magistrate Judge
*Printed name and title*

1

**AFFIDAVIT**

2    I, Allie M.C. Peters, being duly sworn, hereby state as follows:

3                              **INTRODUCTION**

4    1.    This affidavit supports an application for a warrant to search the following

5    electronic device (the "**Target Device**"):

6        a.    CELLULAR TELEPHONE
7              Apple iPhone 8
8              IMEI: 356086094462487

9    as described in Attachment A, and seize evidence of crimes, specifically, violations of Title

10    21, United States Code, Sections 952, 960, and 963, as further described in Attachment B.

11    This search supports an investigation and prosecution of Jesus Hilario LOPEZ for the

12    crimes mentioned above. A factual explanation supporting probable cause follows.

13    2.    On or about July 19, 2019, LOPEZ applied for entry into the United States at

14    the San Ysidro, California, Port of Entry. LOPEZ was the driver and sole occupant of a

15    2009 Honda Pilot bearing California license plates. A subsequent inspection of the vehicle

16    revealed a total of 88 packages concealed in the doors, fuel tank, rear panels, and spare tire

17    of the car. The packages contained a substance that field-tested positive for the

18    characteristics of methamphetamine. The **Target Device** was seized from among

19    LOPEZ's belongings after the discovery of the methamphetamine, and LOPEZ was

20    arrested for the importation of a federally controlled substance. The **Target Device** is

21    currently in the possession of the Department of Homeland Security at 2255 Niels Bohr

22    Ct. San Diego, California, 92154.

23    3.    Based on the information below, there is probable cause to believe that a

24    search of the **Target Device** will produce evidence of the aforementioned crimes, as

25    described in Attachment B.

26    4.    The information contained in this affidavit is based upon my experience and

27    training and consultation with other federal, state, and local law enforcement agents. The

28    evidence and information contained herein was developed from my personal investigation

1

of this matter and my review of documents, reports, and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation. Instead, it contains only those facts necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5.     I am a Special Agent of the United States Department of Homeland Security (DHS), U.S. Immigration & Customs Enforcement, Homeland Security Investigations ("HSI"), and have been so employed since August 2018. From 2015 to 2018, I served as a United States Customs and Border Protection Officer.

6.     I am a graduate of the Federal Law Enforcement Training Center and have received training in investigating various narcotics-related offenses, including the importation of narcotics and narcotics trafficking. I have had training in the methods used by controlled substance smugglers and traffickers to import and distribute drugs and to operate distribution networks. Since April 2019, I have been assigned to a Narcotics Response group in San Ysidro, CA. My duties include investigating the illicit trafficking of controlled substances into the United States. I have participated in the investigation of various drug-trafficking organizations involved in the acquisition, importation, transportation, and distribution of controlled substances into and through the Southern District of California. My training and experience includes the use by narcotics traffickers of mobile telephones and other electronic devices in the normal course of their illicit activities.

7.     In the course of my duties, I have been a case agent directing drug-related investigations. I have participated in many aspects of criminal investigations including reviewing evidence and conducting physical and electronic surveillance. I have interviewed defendants and witnesses related to the illegal trafficking of controlled substances.  Through my observations and these interviews, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers and

2

traffickers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports of entry.

8.      Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a.  Drug smugglers and traffickers often use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

b.  Drug smugglers and traffickers often use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

c.  Drug smugglers and traffickers and their co-conspirators often use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

d.  Drug smugglers and traffickers often use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

e.  Drug smugglers and traffickers often use cellular/mobile telephones to notify or warn their co-conspirators of law enforcement activity to include the presence and posture of marked and unmarked units as well as the operational status of checkpoints and border crossings; and

f.  Drug smugglers and traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

9.      Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones normally contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.   This

3

information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating drug smuggling and trafficking conspiracies that searches of cellular/mobile telephones seized from persons involved in drug trafficking and importation often yield evidence:

    a.    tending to indicate efforts to import methamphetamine or some other controlled substances from Mexico into the United States, or to possess with the intent to distribute methamphetamine or controlled substances within the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other controlled substances from Mexico into the United States, or to facilitate the possession of methamphetamine or other controlled substances within the United States with the intent to distribute;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or other controlled substances from Mexico into the United States, or in the possession of methamphetamine or other controlled substances within the United States with the intent to distribute;

    d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine or other controlled substances from Mexico into the United States, or in the possession of methamphetamine or other controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

    10.    Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug

4

1   conspiracies often require planning and ongoing coordination to successfully evade
2   detection and accomplish the illegal objectives. That planning and coordination frequently
3   occurs over a period of time ranging from days to weeks to months or even years. The
4   planning is often accomplished in part through the use of mobile telephones. Additionally,
5   based on my training and experience, and conversations with other law enforcement
6   officers who investigate drug smuggling and trafficking, I know that co-conspirators are
7   often unaware when a fellow co-conspirator has been arrested and will attempt to
8   communicate with that coconspirator via mobile telephone after his or her arrest to
9   determine the whereabouts of drugs that are being transported. For that reason, I am
10  requesting permission to search the **Target Device** for evidence between January 1, 2019
11  and July 20, 2019, the day after LOPEZ's arrest.

12                    **FACTS SUPPORTING PROBABLE CAUSE**

13          11.    According to a report prepared by CBP Canine Officer A. Olsen, at
14  approximately 6:55 p.m. on July 19, 2019, Officer Olsen was conducting inspections in
15  vehicle pre-primary lane 11 at the San Ysidro POE. LOPEZ approached the pre-primary
16  lane in a Honda Pilot bearing a California License Plate. Officer Olsen's canine "Elliott"
17  alerted to the undercarriage of LOPEZ's Honda Pilot. Officer Olsen obtained the keys and
18  opened the driver side rear door, and his canine alerted to an area under the rear seat.
19  Officer Olsen advised CBP Officer Carlos Pereyra of the alert.

20          12.    According to a report prepared by CBP Officer Pereyra, Officer Pereyra made
21  contact with LOPEZ in the Honda Pilot. LOPEZ stated that he was going "home" to
22  Oxnard, CA. Officer Pereyra asked LOPEZ twice if he had anything to declare, and both
23  times LOPEZ made a negative declaration. Officer Pereyra then inspected the car using a
24  K-910 Buster and received a high rating on the left rear door of the vehicle; the Buster
25  measures density and a high rating indicates the tested area is notably dense. LOPEZ was
26  escorted to the Security Office pending further inspection of the vehicle.

27          13.    According to a report prepared by CBP Officer Alfonso Sanchez, Officer
28  Sanchez scanned the Honda Pilot using a "Z-Portal" x-ray inspection machine. It revealed

1  anomalies in the spare tire, fuel tank, front passenger door, both rear doors, and the rear
2  quarter panels of the vehicle.

3       14.    According to a report by CBP Officer Lexus McDonald, Officer McDonald
4  conducted a seven-point inspection of the Honda Pilot. A cursory inspection of the rear
5  driver's side door panel revealed a white crystal-like substance. CBP Officer J. Garcia
6  tested the substance using a Gemini device. It tested positive for methamphetamine. Officer
7  McDonald located and removed 15 packages concealed in the driver's side rear door,
8  10 packages from the driver's side rear quarter panel, 10 packages in the passenger side
9  door panel, 10 packages in the passenger rear door panel, 20 packages in the passenger rear
10 quarter panel, and 23 packages in the spare tire of the vehicle—a total of 88 packages
11 weighing 41.56 kilograms. It took approximately one hour to remove the packages. Officer
12 McDonald placed LOPEZ under arrest and seized the **Target Device** from among
13 LOPEZ's belongings.

14      15.    Shortly after LOPEZ was arrested, I responded to the San Ysidro POE. I
15 retrieved the **Target Device** from CBP custody and transported it to HSI for storage.

16      16.    Based upon my experience and investigation in this case, there is probable
17 cause to believe that LOPEZ, as well as other persons currently unknown, were involved
18 in an ongoing conspiracy to import and transport methamphetamine. In my experience, it
19 is highly unlikely LOPEZ obtained, loaded, transported, and planned to distribute the
20 methamphetamine without the assistance of anyone else. Based on my experience
21 investigating drug smugglers and traffickers, there is probable cause to believe that LOPEZ
22 used the **Target Device** to coordinate with coconspirators regarding the importation,
23 transportation, and distribution of methamphetamine, and to otherwise further this
24 conspiracy both inside and outside of the United States. Accordingly, there is also probable
25 cause to believe that recent calls made and received, telephone numbers, contact names,
26 electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other
27 digital information are stored in the memory of the **Target Device**, which may identify
28 other persons involved in drug smuggling and trafficking activities.

**METHODOLOGY**

17.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18.    Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

**CONCLUSION**

20.     Based on all of the facts and circumstances described above, there is probable cause to conclude that LOPEZ used the **Target Device** to facilitate violations of Title 21, United States Code, Sections 952, 960, and 963, importation of methamphetamine and conspiracy to do same.

21.     WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the item described in Attachment A, and to seize items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.


_____
Allie M.C. Peters
HSI Special Agent


Subscribed and sworn to before me this _____26__ day of September, 2019.


_____
The Honorable F.A. Gossett
United States Magistrate Judge

## **ATTACHMENT A**

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> CELLULAR TELEPHONE
> Apple iPhone 8
> IMEI: 356086094462487

currently in the possession of the Department of Homeland Security at 2255 Niels Bohr Ct., San Diego, CA 92154.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in **Attachment A** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in **Target Device** for evidence described below. The seizure and search of **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from **Target Device** will be electronic records, communications, and data including but not limited to emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 1, 2019 to July 20, 2019:

 a. tending to indicate efforts to import methamphetamine or other controlled substances from Mexico into the United States;

 b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or other controlled substances from Mexico into the United States;

 c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or other controlled substances from Mexico into the United States;

 d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or other controlled substances from Mexico into the United States;

 e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

 f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963, importation of controlled substances and conspiracy to do same.